UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


THE GOLF CLUB AT BRIDGEWATER,
L.L.C.

      Appellant,

vs.

WHITNEY BANK,

      Appellee.

District Court
Case No. 8:12-cv-01604-EAK

_____/

In re:

THE GOLF CLUB AT
BRIDGEWATER, LLC,

      Appellant.

Bankruptcy Court
Case No. 8:09-bk-10430-CED

_____/


## ORDER AFFIRMING BANKRUPTCY COURT

This cause is before the Court on the appeal filed by The Golf Club at Bridgewater,

L.L.C. (the "Debtor" or "Appellant") from an order of the Bankruptcy Court. The issue on

appeal is whether the Bankruptcy Court erred in entering its Order Granting Motion To Compel

Debtor To Comply With Confirmed Chapter 11 Plan (the "Order"). More specifically, the

Appellant has challenged the Bankruptcy Court's Order on four grounds, arguing that: (1) the

Bankruptcy Court lacked subject matter jurisdiction when it entered the Order, (2) the Order

constituted an impermissible modification of the confirmed Chapter 11 plan, (3) the property

should have been abandoned rather than liquidated, and (4) the Order was precluded by the

doctrines of equitable estoppel, collateral estoppel, *res judicata*, full faith and credit, and *Rooker Feldman*.

For the reasons that follow, this Court finds that the Bankruptcy Court had jurisdiction to enter its Order, and that the other arguments raised by the Appellant are without merit. Accordingly, the Court **AFFIRMS** the Bankruptcy Court.

## *Standard of Review*

This Court reviews a bankruptcy court's factual findings under the clearly erroneous standard, and its conclusions of law *de novo*. *Bush v. Balfour Beatty Bah., Ltd.*, 62 F.3d 1319, 1322 (11th Cir. 1995). This Court reviews a bankruptcy court's interpretations of its own confirmation order under an abuse of discretion standard. *Finova Capital Corp. v. Larson Pharmacy Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294, 1300 (11th Cir. 2005).

## *Background*

The Appellant is a golf course operating as a limited liability company. The Appellant's primary secured lender was Whitney Bank ("Whitney" or "Appellee"). Whitney made two loans to the Appellant, totaling approximately $275,000.00, which were secured by mortgages on the Golf Course Property. Both of the loans were guaranteed by the Appellant's direct and indirect principals (the "Guarantors"). In February 2009, Whitney sued the Guarantors for the amounts due under the guaranty agreements in state court. *See Whitney Bank, a Louisiana state chartered bank, f/k/a Hancock Bank of La., successor by merger to Whitney Nat'l Bank v. Golf Strategies, LLC, et al.*, Case No. 09-CA-002705, Thirteenth Judicial Circuit Court, Hillsborough County, Florida. The Guarantors defended the state court action on the grounds that Whitney had erroneously refused to consolidate the two loans and, thus, impermissibly accelerated their

obligations under the guaranty agreements. Meanwhile, maintaining that Whitney's state court action had negatively impacted the Guarantors' willingness to fund the Appellant's operational deficits, the Appellant filed a voluntary Chapter 11 bankruptcy petition on May 20, 2009.

After struggling to confirm a plan of reorganization, the Appellant's Third Amended Plan of Reorganization (the "Plan") was confirmed on May 28, 2010. Under the terms of the confirmed Plan, the Appellant proposed to market the Golf Course Property for fifteen (15) months. If the Golf Course Property was not sold within the fifteen (15) month marketing period, the Appellant proposed to auction the Golf Course Property, and allow Whitney to credit bid. The Plan as well as the confirmation order included retention of jurisdiction provisions allowing the Bankruptcy Court to enforce and interpret the terms of the Plan. The Plan was substantially consummated on June 28, 2010.

After a series of failed attempts to sell the Golf Course Property during the fifteen (15) month sale period, Whitney filed a motion to compel the Appellant to conduct an auction or to allow Whitney to credit bid in accordance with the Plan. After two hearings, one on April 23, 2012 and another on April 27, 2012, the Bankruptcy Court determined that the Appellant had not complied with the terms of the Plan or its own bid procedures for auctioning the property. The Bankruptcy Court also noted that, prior to its April 27th hearing, it learned that the state court had ruled in favor of the Guarantors. More specifically, the state court found Whitney guilty of unclean hands in improperly accelerating the underlying guaranty agreements. Notwithstanding, the Bankruptcy Court granted the Appellee's motion to compel and required the Appellant to: (1) conduct an auction within forty-five (45) days from the date of its Order in accordance with the Appellant's bid procedures, and (2) if the auction was not conducted within forty-five (45) days, to allow Whitney ten (10) days in which to exercise its credit bid rights.

*Statement of Jurisdiction*

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1). *See* 28 U.S.C. § 158(a)(1) (2012).

*Discussion*

*A.  The Bankruptcy Court had core subject matter jurisdiction to enter its Order.*

At all times, bankruptcy courts derive their subject matter jurisdiction from 28 U.S.C. § 1334. *Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.)*, 195 B.R. 548, 552 (Bankr. D. Mass. 1998) ("After confirmation, there is no new statutory source of the bankruptcy court's jurisdiction."). Section 1334(a) & (b) grants bankruptcy courts subject matter jurisdiction over four types of matters:  (1) the bankruptcy case itself, (2) proceedings that arise under title 11, (3) proceedings that arise in a case under title 11, and (4) proceedings otherwise related to a case under title 11. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir. 1987).

To fall within a bankruptcy court's pre-confirmation subject matter jurisdiction, a particular matter need only be "related to" bankruptcy. *In re Wood*, 825 F.2d at 93. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivable have any effect on the estate being administered in bankruptcy.*" *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). More specifically, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

In the post-confirmation context, however, bankruptcy court subject matter jurisdiction is less broad, and is limited to "matters pertaining to the implementation or execution of the plan." *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex.)*, 266 F.3d 388, 390 (5th Cir. 2001). More specifically, bankruptcy courts retain subject matter jurisdiction to implement and enforce confirmed plans of reorganization that have not been *fully* consummated. *In re Polar Molecular Corp.*, 195 B.R. at 555. Accordingly, bankruptcy court post-confirmation jurisdiction is necessarily limited because as a plan progresses towards consummation, "there are necessarily fewer plan issues which might arise." *Id.* Nonetheless, while a bankruptcy court's jurisdiction can be invoked less frequently post-confirmation, "the court is not without jurisdiction to enforce the remaining unperformed terms of the confirmed plan." *Id.*

Here, the Bankruptcy Court had post-confirmation subject matter jurisdiction to enter its Order. *See Dyer v. First Nat'l Bank at Orlando (In re Seminole Park & Fairgrounds, Inc.)*, 502 F.2d 1011, 1014 (5th Cir. 1974) ("Whatever the plan calls for must be done [and] [t]he Bankruptcy Court has the power to see that it is done."). The Order directed the debtor to comply with the confirmed plan's unperformed terms, and necessarily implicated the "implementation or execution of the plan." *See In re Craig's Stores*, 266 F.3d at 390. Accordingly, the Order falls within a bankruptcy court's limited post-confirmation subject matter jurisdiction.

Next, the issue becomes whether the Bankruptcy Court had "core" jurisdiction to enter a final and binding order requiring the debtor to comply with the terms of the Plan. Pursuant to 28 U.S.C. § 157(b)(1), bankruptcy judges have "the power to determine all core proceedings arising under title 11, or arising in a case under title 11 and to enter appropriate orders and judgments."

*In re Wood*, 825 F.2d at 95 (internal quotations omitted).[1] "A proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Id.* at 97. In determining whether core bankruptcy jurisdiction exists, courts must consider "both the form and the substance of the proceeding." *Id.*

While not all courts adhere to the exact phraseology of *Wood*'s definition of a core proceeding, *see, e.g., PSINET, Inc. v. Cisco Sys. Capital Corp. (In re PSINet, Inc.)*, 271 B.R. 1, 29 (Bankr. S.D.N.Y. 2001) (noting that some core matters involving issues of state law would not qualify as core under the *Wood* test because of its focus on whether the matter could be heard outside of bankruptcy), courts uniformly agree that whether a proceeding is core or non-core depends on its context, nature, and purpose, i.e. the substance underlying the proceeding. *See Id.* ("[T]he issue, for purposes of [our] analysis, is in what context, and for what purpose, are the state law issues – even if they could have been determined in a state court – being decided?"); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 169 (1st Cir. 1987) (stating that it is the nature of the proceedings – its relation to the function of the bankruptcy court – not the state or federal basis for the claim, that is determinative). Accordingly, in determining whether the Bankruptcy Court had core jurisdiction in this matter, the Court's inquiry will focus on the context, nature, and purpose, i.e. the substance underlying the Bankruptcy Court's jurisdiction to enter its Order.[2]

---

[1] In contrast, 28 U.S.C. § 157(c)(2) merely "gives the bankruptcy judge the limited power to hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11 and to submit proposed findings of fact and conclusions of law to the district court, subject to de novo review." *In re Wood*, 825. F.2d at 95 (internal quotations omitted).

[2] The Bankruptcy Court did not cite to § 1142(b) for the statutory authority to enter its Order. Instead, the court cited to § 1141, which makes the terms of a confirmed Chapter 11 plan binding

Admittedly, the Order does not fit neatly within § 157(b)'s enumerated examples of core proceedings, which presuppose an existing bankruptcy estate. *See, e.g., Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1348 (11th Cir. 1999) (noting that pre-confirmation proceedings must involve property of the estate to fall within the § 157(b) definitions of core matters (citing *Gallucci v. Grant (In re Gallucci)*, 931 F.2d 738, 742 (11th Cir. 1991))). Nevertheless, finding core jurisdiction lacking in this case would elevate form over substance by overlooking the fact that the purpose of the Order was to enforce the Bankruptcy Court's prior confirmation order, which necessarily "create[s] core matter jurisdiction." *See Fleetwood Homes of Ga. v. Morrison*, 263 B.R. 646, 652 (S.D. Ga. 2000) ("[W]hen a party is not complying with a court order and the order needs to be enforced, the bankruptcy court has core matter jurisdiction to remedy such noncompliance.").

On this point, the recent Supreme Court case of *Travelers Indemnity Co. v. Bailey* is particularly instructive. In *Bailey*, the Supreme Court stated that "[i]f it is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent, it is all the clearer that a court should enforce a court order, a public governmental act, according to its unambiguous terms." *Travelers Indem. Co. v. Bailey*, 557 U.S.

---

on the debtor. 11 U.S.C. § 1141(a) (2012). Notwithstanding, and for reasons that will be discussed in more detail later in this opinion, this Court agrees that the Bankruptcy Court had core subject matter jurisdiction to enter its Order. Nonetheless, the Bankruptcy Court should have cited to § 1142(b) as the basis for entering its Order, and not merely to § 1141(a). While § 1141(a) does bind a debtor to the terms of a confirmed Chapter 11 plan, § 1142(b) explicitly allows a bankruptcy court to "direct the debtor and any other necessary party to execute . . . a confirmed plan, and to perform any other act . . . that is necessary for consummation of the plan." 11 U.S.C. § 1142(b) (2012). Further, this Court is cognizant that courts have not been consistent in classifying § 1142(b) orders as proceedings *arising under* or *arising in* a case under title 11. *Compare U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 305-06 (5th Cir. 2002) (stating that proceedings to enforce the unperformed terms of a confirmed plan *arise in* a cause under title 11), *with In re Harlow Props., Inc.*, 56 B.R. 794, 797 (9th Cir. BAP 1985) (classifying such proceedings as *arising under* title 11). However, a resolution to that issue is not necessary to our decision in this appeal.

137, 150-51 (2009). In so doing, the Supreme Court called a bankruptcy court's jurisdiction to interpret and enforce its own prior orders indisputable, and noted that confirmation orders are *res judicata* to all parties in privity. *Bailey*, 557 U.S. at 152. Accordingly, it is axiomatic that "a bankruptcy court necessarily has [the] power to enforce its own orders." *See Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012) ("When, in a Chapter 11 case, a bankruptcy court issues an order confirming a reorganization plan, that court retains post confirmation jurisdiction to complete any action pertinent to the plan.") (internal quotations omitted).

The Court's inquiry into the Bankruptcy Court's subject matter jurisdiction implicates an additional issue, namely, whether a bankruptcy court's post-confirmation jurisdiction is dependent on a retention of jurisdiction clause being present in the plan or confirmation order. Courts have expressed differing opinions on this issue. *Compare U.S. Trustee v. Gryphon at Stone Mansion, Inc.*, 216 B.R. 764, 769 (W.D. Pa. 1997) ("[T]he absence of a provision retaining jurisdiction in a confirmed plan does not deprive a bankruptcy court of jurisdiction."), *with Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 220 n.4 (Bankr. N.D. Tex. 2004) ("[A] plan which fails to retain subject matter jurisdiction may leave it lacking."). The Court finds it prudent to adopt the position that, where the bankruptcy court's core jurisdiction is predicated on its power to interpret and enforce its own orders, no such provisions are necessary to confer subject matter jurisdiction on the bankruptcy court.[3]

---

[3] Notwithstanding, the Bankruptcy Court below did expressly retain post-confirmation jurisdiction in this case, which under some circumstances may make jurisdiction "particularly appropriate." *See Alderwoods*, 682 F.3d at 970.

*Abstention*

While the Bankruptcy Court had core subject matter jurisdiction to enter its Order, notwithstanding any retention of jurisdiction provisions in the Plan or confirmation order, this Court has its own concerns regarding whether it was proper for the Bankruptcy Court to do so. Historically, courts have expressed concern "that an overbroad interpretation of section 1334 would bring into federal court matters that should be left to state courts to decide." *In re Wood*, 825 F.2d at 93. The primary constitutional concern with bankruptcy court jurisdiction is not the broad *scope* of bankruptcy court jurisdiction provided in 28 U.S.C. § 1334, but rather "the *placement* of that jurisdiction in non-Article III courts." *Id.* As the Fifth Circuit astutely pointed out in *Wood*, however, the broad scope of jurisdiction provided by 28 U.S.C. § 1334 is nevertheless permissible because bankruptcy courts also have "broad power to abstain wherever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Id.* (quoting 28 U.S.C. § 1331(c)(1) (1984)). This is underscored by the fact that "[p]ermissive abstention under § 1334(c)(1) may be raised by the court sua sponte," and a court's decision to abstain is reviewed on appeal under a lenient abuse of discretion standard. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1207 (5th Cir. 1996).

Neither the Appellant nor the Bankruptcy Court below raised the issue of permissive abstention. Nonetheless, the facts and procedural history of this appeal indicate that permissive abstention may have been appropriate. Specifically, Whitney's state court action against the Guarantors, which was the impetus for the Appellant's bankruptcy filing, resulted in a judgment that Whitney had improperly accelerated the guaranty agreements.

Accordingly, this case presents a perplexing question that does not appear to have been addressed in any court, namely whether a district court sitting as an appellate court can raise *sua sponte* the issue of permissive abstention in place of the bankruptcy court. While 28 U.S.C. § 1334(c)(1) clearly allows a district court to abstain from hearing a particular matter, *see* 28 U.S.C. § 1334(c)(1) ("[N]othing in this section prevents a *district court* in the interests of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.") (emphasis added), this case was referred to the Bankruptcy Court, and the reference has not been withdrawn.[4] Accordingly, the Bankruptcy Court is the proper forum to consider permissive abstention under 28 U.S.C. § 1334(c)(1).

Because the scope of power granted to bankruptcy judges under 28 U.S.C. § 1334 is extremely broad, *see Pacor*, 743 F.2d at 994 (giving bankruptcy judges the power to hear any case that could *conceivably* have an effect on the bankruptcy), 28 U.S.C. § 1334(c)(1)'s permissive abstention provision is an important (in fact necessary) means of ensuring that bankruptcy judges refrain from deciding matters that would be better suited for state tribunals. Further, while bankruptcy courts undoubtedly have core subject matter jurisdiction to interpret and enforce their own orders, and to otherwise enter orders bearing on the implementation and execution of a confirmed plan of reorganization, the breadth of such a rule risks swallowing its exceptions if courts interpret, enforce, implement, and execute without carefully considering the competing interests of justice and comity. While the Bankruptcy Court undoubtedly had core subject matter jurisdiction to enter its Order, the Order may unnecessarily complicate matters in

---

[4] *See In re Standing Order of Reference Cases Arising Under Title 11, United States Code*, No. 12-MC-26-ORL-22, United States District Court, Middle District of Florida.

the state court litigation. Accordingly, in situations like the one at hand, discretion may very well be the better part of valor.

Notwithstanding, since the Appellant has not raised the issue of permissive abstention, and the Bankruptcy Court refrained from doing so *sua sponte*, this Court will affirm the Bankruptcy Court's core subject matter jurisdiction to enter its Order. However, in so doing this Court cautions against the broad application of bankruptcy court jurisdiction in matters such as the one at hand, and encourages bankruptcy courts to consider permissive abstention *sua sponte*, especially in the post-confirmation context.

B. *The Order did not constitute an impermissible modification of the Plan.*

The Appellant argues that the Order, which implemented post-confirmation auction procedures, constituted an impermissible modification of the Plan under § 1127 of the Code. While it is true that the auction procedures referenced in the Order were created after the Plan had been substantially consummated, the incorporation of those procedures did not amount to an impermissible modification of the Plan. The case of *In re Seminole Park and Fairgrounds, Inc.* provides helpful guidance on this matter. *In re Seminole Park & Fairgrounds* the Fifth Circuit affirmed a district court's order enforcing the express terms of a confirmed plan, which awarded a creditor secured status even though it had inadvertently failed to properly perfect its security interest under the UCC. 502 F.2d at 1013-15. In so doing, the Fifth Circuit interpreted the anti-modification provision of the Bankruptcy Act of 1898 and noted that it was intended to "maintain[] the integrity and finality of the approved plan . . . [and] to assure that the plan approved is consummated in fact." *In re Seminole Park & Fairgrounds*, 502 F.2d at 1015. According to the Fifth Circuit, "[f]ar from being a belated effort to alter or amend the plan, what

the Court did was to make the plan effective." *Id. In re Seminole Park & Fairgrounds* is controlling here because the Bankruptcy Court's order did not impermissibly modify the debtor's Plan, but instead made it effective.

C. *Abandonment would constitute an impermissible modification of the Plan.*

The Appellant argues that the Order should be reversed because abandonment of the Golf Course Property would more be beneficial than liquidation. This argument is without merit. As noted by the Supreme Court in *Bailey*, confirmation orders are *res judicata* to all parties in privity. 557 U.S. at 152. Even if the Appellant is correct that abandonment would be more beneficial than consummation of the Plan, a position this Court need not consider, abandoning the Golf Course Property would require a full scale modification of the confirmed Plan. Any such modification, would constitute an impermissible modification under § 1127 of the Code because the Plan has been substantially consummated. 11 U.S.C. § 1127(b) (2012) (allowing modification *after* confirmation but *before* substantial consummation).

D. *The Plan is binding on the Appellant.*

Finally, the Appellant argues that the Order should be reversed because it was improper in light of the doctrines of equitable estoppel, collateral estoppel, *res judicata*, full faith and credit, and *Rooker Feldman* as they pertain to the state court's judgment. Once again, this argument is without merit. The Bankruptcy Court's confirmation order is binding and *res judicata* on the parties in privity. 11 U.S.C. § 1141(a); *Bailey*, 557 U.S. at 152. Since the Plan was confirmed prior to the state court's judgment in favor of the Guarantors, the doctrines of equitable estoppel, collateral estoppel, *res judicata*, full faith and credit, and *Rooker Feldman* are

inapplicable to the Bankruptcy Court's Order, which merely enforced the unperformed terms of the Plan.

None of the Appellant's arguments establish that the Bankruptcy Court lacked the authority to enter its Order, or that the Order should otherwise be reversed. Accordingly, it is

**ORDERED** that the appeal of the Order of the Bankruptcy Court (Doc. 12) is **DENIED**, the Order of the Bankruptcy Court is **AFFIRMED**, and the Clerk of Court is directed to enter judgment for the Appellee and close this case.

DONE and ORDERED in Chambers, in Tampa, Florida, this 22nd day of March, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record